UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| STEPHANIE DAWN HAYES, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 3:24-cv-207 |
| v. | ) | Judge Atchley |
| PATRICK WHITE and PAUL FINLEY, | ) | Magistrate Judge McCook |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tennessee State Trooper Patrick White's Motion to Dismiss [Doc. 21]. For the following reasons, Trooper White's Motion [Doc. 21] is **GRANTED**.

I.  BACKGROUND

Plaintiff Stephanie Hayes and her friend Deanna Cherry celebrated a girls night out by attending a Stevie Nicks concert in Knoxville, Tennessee. [Doc. 1 at ¶ 10]. After arriving at the venue, Hayes purchased a Truly Wild Berry hard seltzer before proceeding with Cherry to their seats. [*Id.* at ¶ 11]. Once there, they began singing, dancing, and talking to the other attendees. [*Id.* at ¶ 12]. Around this time, Hayes also purchased her second alcoholic drink, a Twisted Iced Tea. [*Id.*]. As the concert progressed, a man and woman approached Hayes and Cherry to ask if they were in the right seats. [*Id.* at ¶ 13]. After reviewing their ticket information, Hayes and Cherry realized that although they were in the correct section and seat numbers, they were not in the correct row. [*Id.* at ¶ 14]. As they attempted to leave, the woman whose seat they were in became belligerent and started screaming at Hayes. [*Id.* at ¶¶ 15–16]. Hayes told the woman to get out of her face twice (once with profane language), and the woman responded by kicking Hayes in the knee. [*Id.* at ¶¶ 17–18]. Hayes retaliated by pushing the woman in hopes of getting past her. [*Id.* at

¶ 18]. The woman fell, and Hayes left the area to recompose herself in the bathroom. [*Id.* at ¶¶ 18–20]. When Hayes left the bathroom, she was met by Trooper White, Defendant UTK Campus Police Officer Paul Finley, and UTK Campus Police Officer T. Hamlin who had all been informed of the situation. [*See id.* at ¶ 21; Doc. 21-1].[1] Their interaction was captured on Officer Finley's body-worn camera (cited as "Finley Body Cam").[2] [Docs. 15-1, 16–17].

Hayes began explaining what happened between her and the woman to Trooper White. [Doc. 1 at ¶ 22]. As they were talking, Officer Finley moved behind Hayes. [*Id.* at ¶ 25]. Trooper White told Hayes, "If you don't calm down, you'll have to leave." [*Id.* at ¶ 26]. Almost immediately thereafter "and with stealth precision," Officer Finley grabbed Hayes and told her that she was being asked to leave. [*Id.* at ¶ 27]. Hayes responded by telling Officer Finley to not put his hands on her. [*Id.* at ¶ 28]. Officer Finley then told Hayes that she was under arrest and attempted to place both of Hayes' arms behind her back. [*Id.* at ¶ 29; Finley Body Cam at 01:15–01:20]. Hayes attempted to pull away and both she and Officer Finley ended up falling to the concrete floor. [Doc. 1 at ¶ 30; Finley Body Cam at 01:15–01.26]. Once Hayes was on the ground, Trooper White and Officer Finley managed to handcuff her behind her back. [Doc. 1 at ¶ 30; Finley

---

[1] The Court may consider Doc. 22-1—the affidavits of complaint concerning Hayes sworn to by Officer Finley and accompanying arrest warrants—without converting the instant Motion into one for summary judgment, as the affadavits/warrants are referenced in the Complaint [*see* Doc. 1 at ¶¶ 43–45], integral to Hayes' Fourth Amendment and state law false arrest/imprisonment claims, and matters of public record. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007); *see also Ward v. Taylor*, No. 1:24-cv-19, 2024 U.S. Dist. LEXIS 225150, at *5 (E.D. Tenn. Dec. 12, 2024) (noting that a court may consider a Tennessee affidavit of complaint without turning a motion for judgment on the pleadings—which is governed by the same standard as a Rule 12(b)(6) motion to dismiss—into a motion for summary judgment). That said, Hayes has alleged that these affidavits/warrants contain some inaccuracies, [*see* Doc. 1 at 43–45], and there is a video of the incident which the Court may also consider for the reasons discussed *infra* note 2. Accordingly, the Court has considered Doc. 22-1 only to the extent it is not contradicted by either Hayes' allegations or the video.

[2] The Court may consider this video without converting the instant Motion into one for summary judgment as the video is referenced in the Complaint, relied upon by both Hayes and Trooper White, and captures the whole encounter between them. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017). That said, the allegations of the Complaint still take precedence, and the Court "can only rely on the video[] over the complaint to the degree the video is clear and blatantly contradict[s] or utterly discredit[s] the plaintiff's version of events." *Bell v. City of S.field*, 37 F.4th 362, 364 (6th Cir. 2022) (cleaned up).

Body Cam at 01:26–01:43]. Hayes was then rolled onto her back and pulled to her feet. [Doc. 1 at ¶ 31; Finley Body Cam at 01:43–01:51]. She was then escorted out of the venue by Trooper White and Officer Finley. [Doc. 1 at ¶ 32; Finley Body Cam at 01:51–02:32]. Once outside, Hayes was searched by a female officer before being taken to the Knox County Jail. [Doc. 1 at ¶¶ 34, 38; Finley Body Cam at 03:13–04:25]. She was charged with public intoxication, resisting arrest, and disorderly conduct. [Doc. 1 at ¶ 41]. All three charges were ultimately dismissed. [*Id.* at ¶ 40].

Following this incident, Hayes filed the instant case against Officer Finley and Trooper White. [*See generally id.*]. Now, Trooper White moves the Court to dismiss all of Hayes' claims against him. [*See generally* Doc. 21].

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the

Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. ANALYSIS

Hayes brings the following claims against Trooper White: (A) failure to intervene; (B) Fourth Amendment unreasonable seizure; (C) assault and battery; (D) intentional infliction of emotional distress; and (E) false arrest and imprisonment. [Doc. 1 at ¶¶ 58–95]. For the following reasons, none of these claims can survive Trooper White's Motion to Dismiss.

#### A. Failure to Intervene

Hayes alleges that Officer Finley used excessive force during her arrest and that by not intervening to stop him, Trooper White is liable pursuant to 42 U.S.C. § 1983. [Doc. 1 at ¶¶ 48–64]. This claim must be dismissed because the circumstances of Hayes' arrest did not give rise to a duty to intervene.

"[A]n officer who fails to intervene to prevent another officer's excessive force can face liability for that force under § 1983." *Chaney-Snell v. Young*, 98 F.4th 699, 721 (6th Cir. 2024). But for liability to attach, "[a]n officer must have 'observed' the force 'or had reason to know' a colleague would use it. And the officer must have 'had both the opportunity and the means' to stop it.'" *Id.* at 722 (internal citations omitted) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). If a use of excessive force occurs so rapidly that an officer "lacks a realistic opportunity to intervene and prevent harm[,]" then they cannot be held liable for failing to intervene. *Kent v. Oakland Cnty.*, 810 F.3d 384, 402 (6th Cir. 2016) (internal citations omitted). Applying this logic, courts in the Sixth Circuit have consistently held that an officer has no duty to intervene "where an instance of excessive force lasts only a matter of seconds[.]" *Id.* (collecting cases); *see also Chaney-Snell*, 98 F.4th at 722 ("[A]n officer without forewarning generally will not have the

ability to stop a colleague's force if the force continues for ten seconds or less." (cleaned up)).

Here, approximately nine to ten seconds passed from the time Officer Finley first made physical contact with Hayes till the time they were both on the ground. [Finley Body Cam at 01:11–01:21]. Even assuming that Officer Finley was using excessive force during this time, the incident happened too quickly for Trooper White to have a "realistic opportunity to intervene and prevent harm[]" to Hayes. *Kent*, 810 F.3d at 402. Consequently, Trooper White would only have a duty to intervene if Hayes alleged (or Finley's body-worn camera showed) either that he knew Officer Finley intended to use excessive force or that the use of excessive force lasted longer than those nine to ten seconds. *See id.* Hayes can prevail on neither front.

Hayes focuses her efforts on Trooper White's knowledge, implying that he knew Officer Finley intended to use force and that the two may have developed a plan to use force against her. [Doc. 26 at 6–7]. She states that she needs discovery to fully understand what the plan was and what Trooper White knew. [*Id.*]. The problem with this argument, however, is that the Complaint does not allege that Trooper White knew anything about Officer Finley's intent to use force, and the video from Officer Finley's body-worn camera does not suggest that Trooper White had any such knowledge. Furthermore, Hayes may raise the spector of a plan to use force in her briefing, but she cannot use her brief to supplement her Complaint. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot…amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."). Therefore, she cannot establish that Trooper White knew Officer Finley intended to use the allegedly excessive force against her. Furthermore, Haye's argument that she needs discovery to determine what Trooper White knew is unavailing because "a party may not use the discovery process to obtain the facts necessary to state a claim after filing suit." *Powers v. Merck & Co.*, 773

F. App'x 304, 306 (6th Cir. 2019) (cleaned up).

Turning to the length of time that excessive force was allegedly used, Trooper White argues that any potentially excessive use of force was concluded by the time Hayes was on her stomach being handcuffed. [Doc. 22 at 7–8]. He correctly notes that handcuffing can give rise to an excessive force claim provided that (1) the individual being handcuffed complains that the handcuffs are too tight; (2) officers ignore those complaints; and (3) the individual experiences some physical injury from the handcuffing. *See Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009); [Doc. 22 at 7 n.1]. Although Hayes claims that the handcuffs dug into her wrists, she does not allege that she ever complained about their tightness. [*See* Doc. 1 at ¶ 30]. As a result, Hayes cannot establish an excessive force claim based on her handcuffing. *See Morrison*, 583 F.3d at 401. This means that the time during which she was handcuffed cannot be taken into account when determining whether Trooper White had a duty to intervene as there was no excessive force for him to intervene against. Similarly, the time after Hayes was handcuffed cannot be taken into account as Officer Finley's body-worn camera shows that he and Trooper White used only minimal force against Hayes after she was handcuffed, lifting her to her feet and escorting her out of the venue. *See Meloy v. Akron Police Dep't,* No. 5:15-CV-01123, 2017 U.S. Dist. LEXIS 58941, at *12 (N.D. Ohio Apr. 18, 2017); [Finley Body Cam 01:40–02:35].

Thus, Hayes was potentially subjected to excessive force for, at most, nine to ten seconds. [Finley Body Cam at 01:11–01:21]. Given the brevity of this incident and the lack of allegations concerning Trooper White's knowledge of Officer Finley's intent to use force, Trooper White did not have a "realistic opportunity to intervene and prevent harm[]" to Hayes. *Kent*, 810 F.3d at 402. Accordingly, he had no duty to intervene and this claim must be **DISMISSED**. *Id.*

### B. Unreasonable Seizure

Hayes alleges that Trooper White violated her Fourth Amendment right to be free from unreasonable seizure. Hayes cannot prevail on these claims, however, because Trooper White did not participate in Hayes prosecution (defeating any Fourth Amendment malicious prosecution claim) and probable cause existed for her arrest and imprisonment (defeating any Fourth Amendment false arrest and/or imprisonment claim).

Regardless of whether a Fourth Amendment claim is characterized as one for false arrest, false imprisonment, or malicious prosecution, a plaintiff cannot prevail when probable cause for her arrest and/or prosecution exists, even if the charges underlying her arrest are ultimately dismissed. *See Lester v. Roberts*, 986 F.3d 599, 607 (6th Cir. 2021) ("Those asserting a Fourth Amendment claim against a pretrial detention (or prosecution) must show, at a minimum, that the defendant lacked probable cause."); *Gordon v. Clinton Police Dep't*, No. 3:19-cv-496, 2021 U.S. Dist. LEXIS 72971, at *7 (E.D. Tenn. Apr. 15, 2021) (Atchley, J.) ("[T]he fact that the charges against Plaintiff were ultimately dismissed is insufficient to establish a claim for false arrest and false imprisonment, as dismissal does not mean that the underlying arrest was unlawful."). Ordinarily, it is for a jury to decide whether probable cause existed to support an arrest/prosecution unless "there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). "But under § 1983, 'an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.'" *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008) (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)).

"Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U. S. 320, 338 (2014)). In determining whether it exists, courts "examine whether, at the moment of arrest, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *United States v. Brown*, No. 23-3657, 2024 U.S. App. LEXIS 23970, at *10 (6th Cir. Sep. 19, 2024) (first alteration in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). This inquiry is an objective one, and "the officer's subjective reasons for making an arrest" are not relevant to determining whether probable cause exists. *See Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007). Furthermore, so long as probable cause exists for at least one arrestable offense, a plaintiff cannot prevail on a Fourth Amendment false arrest and/or imprisonment claim regardless of whether probable cause supported the other charged offenses. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) ("An arrest is valid so long as there is probable cause for a single charge of an arrestable offense."); *Rice v. Jones*, No. 22-3972, 2023 U.S. App. LEXIS 15936, at *4 (6th Cir. June 23, 2023) ("To prevail on a false arrest or false imprisonment claim, a plaintiff must show that he was arrested without probable cause.")

The same is not true of Fourth Amendment malicious prosecution claims, however, which may proceed where a plaintiff has been charged validly for some offenses but baselessly for others. *See Chiaverini v. City of Napoleon*, 602 U.S. 556, 562, 144 S. Ct. 1745, 1750 (2024). That said, the Court need not analyze whether probable cause supported all of the offenses Hayes was charged with because Trooper White did not participate in Hayes' prosecution. While "[a] malicious prosecution case can be made against an investigating officer despite the officer not actually making the decision to prosecute[,]" *Billock v. Kuivila*, No. 4:11-cv-02394, 2013 U.S.

Dist. LEXIS 20388, at *9 (N.D. Ohio Feb. 14, 2013), "an officer's 'participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake.'" *Baker v. Paolucci*, No. 2:14-CV-91 (WOB-CJS), 2017 U.S. Dist. LEXIS 84535, at *10 (E.D. Ky. June 2, 2017) (quoting *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015)). "If the officer plays no role after making an arrest, he cannot be liable for malicious prosecution." *Id.* Here, Hayes does not allege that Trooper White played any role in her prosecution and the affadivats of complaint/arrest warrants contained in the record show that they were obtained by Officer Finley, not Trooper White. [*See generally* Doc. 21-1]. Accordingly, Hayes cannot prevail on a Fourth Amendment malicious prosecution claim against Trooper White irrespective of whether probable cause existed for all of her charged offenses.

As for whether probable cause supported Hayes' arrest, Trooper White had probable cause to arrest Hayes for at least disorderly conduct and resisting arrest. Tennessee law states that a person commits the offense of disorderly conduct if she "[e]ngages in fighting or in violent or threatening behavior[.]" TENN CODE. ANN. § 39-17-305(a)(1). Hayes readily admits that she used profane language against another woman and pushed her with such force that the woman fell to the ground. [Doc. 1 at ¶¶ 17–18]. Although Hayes maintains that she was not the primary aggressor, this does not change the fact that—based on her own allegations—there was probable cause to believe she had "[e]ngaged in fighting or in violent or threatening behavior[.]" TENN CODE. ANN. § 39-17-305(a)(1). Indeed, it is difficult to conceive how pushing someone to the ground so you can get past her can be characterized as anything other than violent. Furthermore, it is immaterial that Trooper White did not personally witness Hayes push the woman because in the Sixth Circuit, "the offense need not even have been committed in the officer's presence to

satisfy the Fourth Amendment—probable cause alone is sufficient to seize a person suspected of a misdemeanor." *United States v. Jones*, 55 F.4th 496, 501 (6th Cir. 2022).

Additionally, while the existence of probable cause for only one offense is sufficient to defeat Hayes' Fourth Amendment false arrest and/or imprisonment claims, the Court also notes that Trooper White had probable cause to arrest Hayes for resisting arrest. Under Tennessee law,

> It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

TENN. CODE ANN. § 39-16-602(a). Here, Officer Finley's body-worn camera clearly shows that after Hayes was informed she was under arrest, she stated she would leave and attempted to pull away from Officer Finley as he was both actively trying to handcuff her and telling her to stop. [Finley Body Cam at 01:15–01:20]. Hayes remained noncompliant until both she and Officer Finley fell to the ground. [*Id.* at 01:15–01:28]. Tennessee courts have repeatedly held that pulling away from a law enforcement officer can fall within the definition of resisting arrest. *See, e.g.*, *State v. Jones*, No. W2011-02311-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 739, at *8 (Crim. App. Sep. 17, 2012); *State v. Leke*, No. W2009-02583-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 860, at *15 (Crim. App. Oct. 15, 2010). And although Hayes' resisting arrest charge was ultimately dismissed [Doc. 21-1 at 6], the fact remains that her pulling away from Officer Finley provided probable cause to believe that she was committing that offense.

Hayes does not directly challenge whether probable cause existed to support her arrest but instead appears to assert that the magistrate who ultimately signed her arrest warrants was given false information by Officer Finley. [*See* Doc. 26 at 7, 9]. This is irrelevant to whether probable cause supported Hayes' arrest as her own allegations and the video from Officer Finley's body-

10

Case 3:24-cv-00207-CEA-JEM    Document 30    Filed 01/27/25    Page 10 of 16
PageID #: 133

worn camera establish probable cause irrespective of whether the magistrate's probable cause determination was based on faulty information. *See* [Doc. 1 at ¶¶ 17–18; Finley Body Cam at 01:15–01:28]; TENN CODE. ANN. §§ 39-16-602(a), 39-17-305(a)(1). Therefore, Hayes' Fourth Amendment unreasonable seizure claims against Trooper White must be **DISMISSED**.

### C. Assault and Battery

Hayes alleges that Trooper White's actions on the day of her arrest constitute the Tennessee torts of assault and battery. [Doc. 1 at ¶¶ 79–84]. Each of these torts requires a separate analysis though neither can survive Trooper White's Motion to Dismiss.

The Court will start with Hayes' battery claim. Under Tennessee law, "the tort of battery [is] 'an intentional act that causes an unpermitted, harmful or offensive bodily contact.'" *Lacy v. Hallmark Volkswagen Inc.*, No. M2016-02366-COA-R3-CV, 2017 Tenn. App. LEXIS 462, at *9 (Ct. App. July 10, 2017) (quoting *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9-CV, 2001 Tenn. App. LEXIS 224, 2001 WL 327906, at *4 (Tenn. Ct. App. Apr. 5, 2001)). Hayes claims that Trooper White made such contact when he "held [Hayes] down and assisted in putting handcuffs on [her] and then helped her up, while she was handcuffed." [Doc. 26 at 8]. This argument is unpersuarive. Tennessee law expressly states that "[a] law enforcement officer, after giving notice of the officer's identity as such, may use or threaten to use force that is reasonably necessary to accomplish the arrest of an individual suspected of a criminal act who resists or flees from the arrest." TENN. CODE. ANN. § 39-11-620(a); *see also Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 58 (Tenn. Ct. App. 2013) ("'A police officer is not liable for assault and battery in connection with a use of force he or she is statutorily authorized to employ.'" (quoting 6A C.J.S. Assault § 35 (footnotes omitted))); *Stafford v. Jackson Cnty.*, No. M2016-01883-COA-R3-CV, 2017 Tenn. App. LEXIS 528, at *10 (Ct. App. Aug. 4, 2017) ("In making an

arrest, a police officer is privileged to use only that force necessary to effect the arrest, while also maintaining his own personal safety and that of others present." (internal quotation marks omitted)).

The Court has already concluded both that Trooper White had probable cause to arrest Hayes and that Hayes resisted her arrest by attempting to pull away from Officer Finley. *See supra* Section III.B. The Court has also already concluded that the force Trooper White personally used was not excessive under the circumstances. *See supra* Section III.A. Combining these conclusions with the fact that Trooper White's uniform gave Hayes ample notice that Trooper White was a law enforcement officer [*see generally* Finley Body Cam], Hayes' battery claim against Trooper White must fail as the contact he made with her was permitted by Tennessee law. *See, e.g.*, TENN. CODE. ANN. § 39-11-620(a).

Turning to Hayes' assault claim, "[i]n Tennessee, the tort of assault has two elements: '(1) An intentional attempt or the unmistakable appearance of an intentional attempt to do harm to, or to frighten, another person; and (2) The present ability or the unmistakable appearance of the present ability to do that harm or to cause that fright.'" *Doe v. Andrews*, 275 F. Supp. 3d 880, 887 (M.D. Tenn. 2017) (quoting T.P.I. Civil § 8.01). "[A]n assault cannot be committed by words alone, no matter how insulting, offensive, or abusive those words might be. Rather, the words must be accompanied by an overt act or physical movement causing the plaintiff to reasonably believe that he or she is in imminent physical danger." *Johnson v. Cantrell*, C.A. No. 01A01-9712-CV-00690, 1999 Tenn. App. LEXIS 7, at *11–12 (Ct. App. Jan. 20, 1999) (internal citations omitted).

The Court has searched the Complaint and reviewed the video from Officer Finley's body-worn camera. Neither contain any indication that Trooper White took any overt act or made any physical movement that caused Hayes to reasonably believe she was in imminent physical danger.

To the contrary, both suggest that while Hayes was displeased with the way Trooper White was talking to her prior to her arrest, talking and gesturing toward the exit were all he did. [Doc. 1 at ¶¶ 21–22, 25–26; Finley Body Cam at 00:25–01:15]. Because of this, her assault claim against Trooper White must fail. *See Johnson*, 1999 Tenn. App. LEXIS 7, at *11-12.

For the foregoing reasons, Hayes' assault and battery claims against Trooper White are **DISMISSED**.

### D. Intentional Infliction of Emotional Distress

Hayes alleges that Trooper White intentionally inflicted emotional distress upon her by using force during her arrest and by failing to intervene when Officer Finley used force against her. [Doc. 1 at ¶¶ 85–89]. Because these allegations fail to establish an element of intentional infliction of emotional distress ("IIED") under Tennessee law, Hayes' IIED claim must be dismissed.

To establish IIED under Tennessee law, a plaintiff must show "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). The second of these elements is particularly challenging to meet as "Tennessee has adopted the definition of outrageous conduct given in the Restatement (Second) of Torts" *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004). This definition provides:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor,

and lead him to exclaim, 'Outrageous!'"

*Id.* (quoting—through other cases—RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (AM. L. INST. 1965)). "[M]ere insults, indignities, threats, annoyances, petty oppression or other trivialities[]" are insufficient to establish liability. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (internal quotation marks omitted). Here, the alleged circumstances surrounding Hayes' arrest are insufficiently outrageous to give rise to an IIED claim against Trooper White.

Regarding Trooper White's alleged failure to intervene, the Court has already noted that Officer Finley's use of force was so sudden and brief that Trooper White did not have a realistic opportunity to stop him. *See supra* Section III.A. Given this, the Court cannot say that Trooper White's inaction was so outrageous as to "go beyond all bounds of decency" or be "utterly intolerable in a civilized community[.]" *See Leach*, 124 S.W.3d at 92. To hold otherwise would potentially subject Trooper White to liability for actions that he had no realistic ability to stop. Consequently, the Court finds that Hayes has failed to state an IIED claim against Trooper White based on his alleged failure to intervene.

Regarding Trooper White's alleged use of force during Hayes' arrest, this too is insufficiently outrageous. The Tennessee Court of Appeals has previously considered whether force used during an arrest can be sufficiently outrageous to support an IIED claim. In *Stafford v. Jackson County*, one of the plaintiffs was arrested after interfering with a traffic stop. No. M2016-01883-COA-R3-CV, 2017 Tenn. App. LEXIS 528, at *1–2 (Ct. App. Aug. 4, 2017). The plaintiffs alleged that the arrestee "suffered ongoing mental distress as a result of [the defendant law enforcement officer's] intentional act of handcuffing her and jerking up on her wrists, thereby causing a torn rotator cuff." *Id.* at *17. Although the Court of Appeals allowed an excessive force claim to proceed regarding this conduct, *see id.* at *11–16, it concluded that the plaintiffs'

allegations "d[id] not rise to the level of such outrageous and extreme conduct as to go beyond all bounds of decency and to be regarded as utterly intolerable in a civilized community." *Id.* at *18 (internal quotation marks omitted). Accordingly, the Court of Appeals affirmed the trial court's granting of summary judgment to the defendants. *Id.* Here, the video from Officer Finley's body-worn camera shows that Trooper White used even less force against Hayes than was at issue in *Stafford*. *Compare id.* at *17–18, *with* [Finley Body Cam at 01:26–01:43]. Consequently, the Court finds that Trooper White's alleged use of force during Hayes' arrest was insufficiently outrageous to support an IIED claim. *See Stafford*, 2017 Tenn. App. LEXIS 528, at *17–18. Therefore, Hayes' IIED claim against Trooper White must be **DISMISSED**.

E. **False Arrest and Imprisonment**

In addition to her Fourth Amendment unreasonable seizure claim, Hayes also brings state law claims for false arrest and imprisonment against Trooper White. [Doc. 1 at ¶¶ 90–95]. But because the existence of probable cause for an arrestable offense is a defense to false arrest and imprisonment claims under Tennessee law, these claims—like Hayes' Fourth Amendment claims—must fail.[3] *See Williams v. Coe*, 1985 Tenn. App. LEXIS 3432, at *5 (Ct. App. Oct. 25, 1985) ("The existence of probable cause for detention or arrest is a defense to an action for false arrest or imprisonment so long as the defense is asserted in good faith."); *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 54 (Tenn. Ct. App. 2013) ("To successfully prosecute a claim of false arrest

---

[3] It is unclear whether Tennessee law would permit Hayes' false arrest and imprisonment claims to go forward if probable cause existed for only Hayes' disorderly conduct charge as the events giving rise to this offense occurred outside of Trooper White's presence, and Trooper White could therefore only arrest Hayes for this offense pursuant to a warrant. *See* TENN. CODE ANN. §§ 39-17-305(c), 40-7-103(a); *Weser v. Goodson*, 965 F.3d 507, 517–19 (6th Cir. 2020) (discussing the lack of authority concerning whether a Tennessee false arrest claim may proceed where probable cause existed for an individual's arrest but her arrest was not permitted by state law). Given, however, that Trooper White personally observed the events establishing probable cause for Hayes' resisting arrest charge and could therefore make a warrantless arrest under Tennessee law, *see* TENN. CODE ANN. §§ 40-7-103(a), 39-16-602(d), it is unnecessary for the Court to predict whether the Tennessee Supreme Court would allow Hayes' false arrest and imprisonment claims to proceed if probable cause existed for only disorderly conduct.

and imprisonment, the plaintiff must prove '(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint.'") (*quoting Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990)). Accordingly, Hayes' false arrest and imprisonment claims against Trooper White are **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, Trooper White's Motion [Doc. 21] is **GRANTED**. The claims against him are **DISMISSED**, and he is no longer a defendant in this action.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**